2006 ME 12

**Herschel CONLOGUE et al.**

v.

**Patricia CONLOGUE.**

Supreme Judicial Court of Maine.

Argued: Oct. 18, 2005.
Decided: Feb. 9, 2006.

Richard L. Currier, Esq., Anthony A. Trask, Esq. (orally), Currier & Trask, P.A., Presque Isle, for plaintiffs.

Daniel R. Nelson, Esq., Stephen D. Nelson, Esq. (orally), Severson, Hand & Nelson, P.A., Houlton, for defendant.

G. Steven Rowe, Attorney General, Heidi D. Silver, Asst. Atty. Gen. (orally), Matthew E. Pollack, Asst. Atty. Gen., Augusta, for amicus curiae.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Herschel and Jane Conlogue appeal from a judgment entered in the District Court (Houlton, *O'Mara, J.*) dismissing their petition under section 1803 of the Grandparents Visitation Act, 19–A M.R.S. §§ 1801–1805 (2005).[1] They argue that the court erred (1) in concluding that the Act's grant of standing to grandparents

---

1. At the time of the grandparents' petition, the statute provided, in relevant part:

§ 1803. Petition

1. Standing to petition for visitation rights. A grandparent of a minor child may petition the court for reasonable rights of visitation or access if:

A. At least one of the child's parents or legal guardians has died;

B. There is a sufficient existing relationship between the grandparent and the child; or

C. When a sufficient existing relationship between the grandparent and the child does not exist, a sufficient effort to establish one has been made.

2. Procedure. The following procedures apply to petitions for rights of visitation or access under subsection 1, paragraph B or C.

A. The grandparent must file with the petition for rights of visitation or access an affidavit alleging a sufficient existing relationship with the child, or that sufficient efforts have been made to establish a relationship with the child. When the petition and accompanying affidavit are filed with the court, the grandparent shall serve a copy of both on at least one of the parents or legal guardians of the child.

B. The parent or legal guardian of the child may file an affidavit in response to the grandparent's petition and accompanying affidavit. When the affidavit in response is filed with the court, the parent or legal guardian shall deliver a copy to the grandparent.

C. The court shall determine on the basis of the petition and the affidavit whether it is more likely than not that there is a sufficient existing relationship or, if a sufficient relationship does not exist, that a sufficient effort to establish one has been made.

D. If the court's determination under paragraph C is in the affirmative, the court shall hold a hearing on the grandparent's petition for reasonable rights of visitation or access and shall consider any objections the parents or legal guardians may have concerning the award of rights of visitation or access to the grandparent. The standard for the award of reasonable rights of visitation or access is provided in subsection 3.

3. Best interest of the child. The court may grant a grandparent reasonable rights

when one parent has died, *id.* § 1803(1)(A), is unconstitutional; and (2) in its award of costs, including attorney fees, to Patricia Conlogue. We affirm the court's dismissal of the petition on due process grounds, but we vacate the award of costs and fees.

## I. BACKGROUND

[¶ 2] Kevin and Patricia Conlogue were married and had one daughter, born in 2000. Kevin died in 2003. In June 2004, Kevin's parents, Herschel and Jane (the grandparents), filed a petition under the Act, seeking court-ordered visitation with their granddaughter. Patricia filed a motion to dismiss because the grandparents had not filed an affidavit pursuant to section 1803(2)(A) of the Act alleging facts that would establish their standing under section 1803(1)(B) or (C). Patricia withdrew her motion when the grandparents objected that they were proceeding under section 1803(1)(A), which gives grandparents standing to file a petition when "[a]t least one of the child's parents or legal guardians has died" and does not require the filing of an affidavit.[2]

[¶ 3] Patricia then filed a second motion to dismiss on constitutional grounds and a motion for costs and fees, with a supporting affidavit setting forth her attorney fees of $1133.30. She later filed a second affidavit with information about her financial situation. The grandparents opposed both motions but did not file a financial affida-

vit. The court held a hearing in November 2004 at which it heard argument on the motion to dismiss. The grandparents' attorney then asked that the court defer ruling on the motion for costs and fees until a final hearing and that "if you want financial information from [the grandparents], that I have fourteen days to do that." The court replied, "[W]hat I'm going to do on that—that motion is defer it until a final hearing, if there is one.... So, on the motion for fees, that is deferred." The grandparents did not submit any financial information following the hearing.

[¶ 4] In January 2005, without holding an additional hearing, the court entered an order granting both of Patricia's motions. The order included an extensive analysis of the issues raised by the motion to dismiss, but the only discussion of the motion for fees and costs was the following: "After review of the pleadings, and fee affidavit, Respondent's Motion for Costs is GRANTED, pursuant to [19–A M.R.S.A. § 1803(6) (1998)]. Respondent is awarded $1,000.00 for her attorney's fees, execution to issue." The grandparents then brought this appeal.

## II. DISCUSSION

### A. Constitutionality of 19–A M.R.S. § 1803(1)(A)

#### 1. Constitutional Issue on Appeal

[¶ 5] Patricia's motion to dismiss contended that section 1803(1)(A) is uncon-

---

of visitation or access to a minor child upon finding that rights of visitation or access are in the best interest of the child and would not significantly interfere with any parent-child relationship or with the parent's rightful authority over the child. In applying this standard, the court shall consider the following factors ....

19–A M.R.S.A. § 1803(1)-(3) (1998). A recent change to section 1803(2)(D), *see* P.L. 2005, ch. 360, § 3, is not relevant to this appeal.

2. For reasons that are not clear from the record, the grandparents later filed an affidavit detailing their relationship with their granddaughter. As they have continued to rely exclusively on section 1803(1)(A) to establish their standing, we do not consider this affidavit. Nor do we address the issue, not argued by the parties before the trial court or on appeal, of whether the grandparents might have standing under subsections (1)(B) or (C).

stitutional on its face and as applied under the due process and equal protection clauses of the United States and Maine Constitutions. We need not address all of these issues. First, we do not address Patricia's facial challenge to the statute. We note that nothing in the Act limits grandparent visitation petitions to situations where the child is in the custody of a biological or adoptive parent. To find section 1803(1)(A) is unconstitutional on its face, we would need to conclude that there are no circumstances in which it would be valid. *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), *cited in In re Heather C.,* 2000 ME 99, ¶ 20, n. 7, 751 A.2d 448, 454. To do this, we would need to explore the very different issues that would be raised by a petition to require visitation against the wishes of a nonparent custodian such as a legal guardian. Because this case can be resolved on an as-applied basis, we have no reason to address such issues.

[¶ 6] Second, we do not address the validity of the statute under the Maine Constitution. Patricia has not argued that the Maine due process and equal protection clauses provide her with any greater protection than their federal counterparts, *cf. Carroll F. Look Constr. Co. v. Town of Beals,* 2002 ME 128, ¶ 17, 802 A.2d 994, 999 (stating that federal and Maine due process rights are coextensive); *Botting v. Dep't of Behavioral & Developmental Servs.,* 2003 ME 152, ¶ 23, 838 A.2d 1168, 1176 (stating that federal and Maine equal protection rights are coextensive), and the parties have not pressed any state consti-

tutional arguments on appeal. Finally, our disposition of Patricia's due process argument makes it unnecessary for us to address her equal protection argument. Our discussion is thus confined to the issue of whether section 1803(1)(A), as applied in this case, violates Patricia's federal due process rights.[3]

### 2. *Troxel* and *Rideout*

[¶ 7] Our analysis of this question begins with the decisions of the United States Supreme Court in *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), and of this Court in *Rideout v. Riendeau,* 2000 ME 198, 761 A.2d 291. Although in neither case was a single opinion joined by the majority of the court,[4] the plurality opinions in both cases offer significant guidance on the substantive due process implications of a statute providing for court-ordered grandparent visitation.

[¶ 8] In *Troxel,* the Supreme Court considered an order granting visitation to the paternal grandparents of two girls whose father was deceased, over the objections of their mother. 530 U.S. at 60–61, 120 S.Ct. 2054. The Washington statute at issue allowed a court to grant visitation to any person at any time if the court found visitation to be in the best interest of the child. *Id.* at 61, 120 S.Ct. 2054. The Supreme Court affirmed the judgment of the state supreme court holding the statute to be unconstitutional. *Id.* at 63, 120 S.Ct. 2054. Justice O'Connor's plurality opinion concluded that the statute, as ap-

---

**3.** In addition, we construe Patricia's due process argument to be confined to substantive due process, and so do not consider any procedural due process issues. *See In re Amberley D.,* 2001 ME 87, ¶¶ 11–12, 775 A.2d 1158, 1163.

**4.** In *Troxel,* Justice O'Connor's plurality opinion was joined by three other justices; two

justices filed opinions concurring in the judgment; and three justices filed dissenting opinions. In *Rideout,* Justice Saufley's plurality opinion was joined by two other justices; two justices joined in an opinion concurring in the result; one justice filed a dissenting opinion; and one justice did not participate.

plied, violated the mother's fundamental substantive due process right to make decisions concerning the care, custody, and control of her children. *Id.* at 72, 75, 120 S.Ct. 2054. This conclusion rested on the "sweeping breadth" of the statute and the fact that the trial court had applied a presumption in favor of grandparent visitation rather than deferring to the mother's judgment on whether visitation was in the best interest of the children. *Id.* at 67–73, 120 S.Ct. 2054. According to the plurality, such a decision by a fit parent must be given "special weight," and can only be interfered with by the state on a showing of "special factors." *Id.* at 68–69, 120 S.Ct. 2054. The plurality declined to decide whether such special factors are limited to harm or potential harm to the child, because there were no special factors present that could justify the trial court's order of visitation.[5] *Id.* at 73, 120 S.Ct. 2054.

[¶ 9] In *Rideout,* this Court examined the constitutionality of court-ordered visitation under the Maine Act in a situation where the grandparents asserted standing pursuant to 19–A M.R.S.A. § 1803(1)(B) (1998) based on a "sufficient existing relationship" with their grandchildren. 2000 ME 198, ¶ 17, 761 A.2d at 299. The District Court found that the grandparents met the statutory criteria and would be entitled to visitation, but held the Act to be unconstitutional and so dismissed the petition. *Id.* ¶ 6, 761 A.2d at 295. We vacated the judgment and remanded for further proceedings. *Id.* ¶ 34, 761 A.2d at 303.

[¶ 10] Justice Saufley's plurality opinion upheld the Act as applied against the parents' substantive due process challenge. *Id.* ¶ 33, 761 A.2d at 303. Because an order of visitation against the parents' wishes infringes upon a fundamental right that is well-established in Maine and federal precedent, the statute had to withstand strict scrutiny, which requires that the infringement be narrowly tailored to serve a compelling state interest. *Id.* ¶¶ 18–20, 761 A.2d at 299–300. The plurality concluded that a compelling state interest in interfering with the decision-making of a fit parent may exist not only when there is a threat of "harm" to the child, narrowly defined, but also when other "urgent reasons" are present. *Id.* ¶¶ 23–24, 761 A.2d at 300–01. One such urgent reason is the preservation of an existing relationship between grandparents and grandchildren when the grandparents functioned as parents to the children for a significant period of time, as the Rideouts alleged that they had done. *Id.* ¶¶ 25–27, 761 A.2d at 301–02.

[¶ 11] The plurality next considered whether the Act was narrowly tailored to serve this compelling interest, and concluded that it was. *Id.* ¶¶ 29, 33, 761 A.2d at 302–03. In sharp contrast to the statute at issue in *Troxel,* the Maine Act contains multiple layers of protections before grandparent visitation can be ordered: the grandparent must first establish standing; the court must consider the parent's objections; and the court may order visitation only if it would not significantly interfere with the parent-child relationship or the parent's rightful authority. *Id.* ¶¶ 29–32, 761 A.2d at 302–03. The plurality thus concluded that the Act could be applied without violating the parents' constitutional rights.[6] *Id.* ¶ 33, 761 A.2d at 303.

---

5. Justice Saufley's plurality opinion in *Rideout* includes a more extensive discussion of *Troxel. See Rideout v. Riendeau,* 2000 ME 198, ¶¶ 7–12, 18, 26 & n. 16, 30–31, 761 A.2d 291, 295–97.

6. Chief Justice Wathen, joined by Justice Rudman, concurred only in the result. *Rideout,* 2000 ME 198, ¶¶ 35–46, 761 A.2d at 304–08. Their view was that only a facial challenge was at issue and that the Act was not facially unconstitutional. *Id.* ¶ 46, 761 A.2d at 308.

3. Rights at Issue and Level of Scrutiny

[¶ 12] It is well established that, pursuant to the substantive due process component of the Fourteenth Amendment, parents have a fundamental liberty interest in making decisions concerning the care, custody, and control of their children. *E.g., Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Scott S.*, 2001 ME 114, ¶ 20 n. 12, 775 A.2d 1144, 1151. It follows that a court order requiring grandparent visitation against the wishes of a parent constitutes an infringement of that fundamental right. *Troxel*, 530 U.S. at 67, 120 S.Ct. 2054 (plurality); *Rideout*, 2000 ME 198, ¶ 21, 761 A.2d at 300 (plurality). The *Troxel* plurality did not articulate the level of scrutiny by which such an infringement should be tested. *See* 530 U.S. at 65–75, 120 S.Ct. 2054. The *Rideout* plurality applied strict scrutiny. 2000 ME 198, ¶ 19, 761 A.2d at 300; *see also id.* ¶ 53, 761 A.2d at 309 (Alexander, J., dissenting). That approach followed the general principles set forth in previous Supreme Court decisions, *see, e.g., Reno v. Flores*, 507 U.S. 292, 301–02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), and in Justice Thomas's *Troxel* concurrence, 530 U.S. at 80, 120 S.Ct. 2054, and is consistent with more recent decisions of several other state courts, *e.g., Harold v. Collier*, 107 Ohio St.3d 44, 836 N.E.2d 1165, 1171 (2005); *Blixt v. Blixt*, 437 Mass. 649, 774 N.E.2d 1052, 1059 (2002); *Roth v. Weston*, 259 Conn. 202, 789 A.2d 431, 441 (2002).

[¶ 13] The application of strict scrutiny in *Rideout* is not necessarily controlling here, however. To determine the proper level of scrutiny in this case, we must focus on the exact imposition on Patricia's rights that is at issue. Section 1803(1)(A) does not force Patricia to allow visitation. It forces her, rather, to litigate the question of visitation, which would then be decided by the trial court (presumably after a hearing)[7] applying the statutory criteria in section 1803(3). Whether we must apply strict scrutiny, therefore, depends on whether being forced to litigate a claim that may result in an infringement of a fundamental right *itself* constitutes an infringement of that right. In this context, considering the importance of the right, we believe that it does. This conclusion appears to be supported by the plurality opinions in *Troxel* and *Rideout* as well as decisions from courts in other states.

[¶ 14] The *Troxel* plurality's conclusion that the Washington statute was unconstitutional as applied was based partially on the fact that the statute contained no limitation on who could file a third-party visitation petition. 530 U.S. at 67, 120 S.Ct. 2054. The plurality also noted that "the burden of litigating a domestic relations proceeding can itself be 'so disruptive of the parent-child relationship that the constitutional right of a custodial parent to make certain basic determinations for the child's welfare becomes implicated.'" *Id.* at 75, 120 S.Ct. 2054 (quoting *id.* at 101, 120 S.Ct. 2054 (Kennedy, J., dissenting)). Similar concerns were voiced in *Rideout*. The plurality's conclusion that the Maine

---

Justice Alexander dissented, concluding that the Act violated the parents' due process rights. *Id.* ¶¶ 47–70, 761 A.2d at 308–13.

7. Strictly speaking, the Act only requires the court to hold a hearing and consider the parent's objections when the grandparent has established standing under section 1803(1)(B) or (C), not under subsection (1)(A). *See* 19-A

M.R.S. § 1803(2)(D) (2005). We have no doubt, however, that a court applying the Act in light of *Troxel* and *Rideout* would not grant visitation over the objections of a custodial parent without holding a hearing and considering those objections, regardless of the basis of the grandparent's standing.

Act, as applied in that case, was narrowly tailored to serve a compelling state interest depended in part on the fact that the grandparents there were required to convince the court of their statutory standing by an initial showing of a "sufficient existing relationship" with their grandchildren, thus providing the parents with some "protection against the expense, stress, and pain of litigation." 2000 ME 198, ¶¶ 26, 30, 761 A.2d at 301–02. The grandparents' showing that they had functioned as parents to their grandchild gave the state a compelling interest in "providing a forum" in which the grandparents could litigate the visitation issue. *Id.* ¶¶ 26, 28, 761 A.2d at 301–02.

[¶ 15] Other courts have also suggested that the mere commencement of third-party visitation litigation can infringe a parent's fundamental rights, and have adopted various threshold requirements for bringing such litigation when these were not provided by statute. The Connecticut Supreme Court stated that "[w]here fundamental rights are implicated ..., standing serves a function beyond a mere jurisdictional prerequisite. It also assures that the statutory scheme is narrowly tailored so that a person's personal affairs are not needlessly intruded upon and interrupted by the trauma of litigation." *Roth*, 789 A.2d at 442. To save the constitutionality of the Connecticut statute, which contained no limits on standing, the court added a requirement that "any third party, including a grandparent ..., seeking visitation must allege and establish a parent-like relationship *as a jurisdictional threshold* in order ... to pass constitutional muster ...." *Id.* at 443 (emphasis added). The Massachusetts Supreme Judicial Court similarly adopted a narrowing construction of the commonwealth's grandparent visitation statute in response to a constitutional challenge. *See Blixt*, 774 N.E.2d at 1060. The court held that, be-

cause the usual requirements of notice pleading do not sufficiently protect a parent's fundamental rights from the burden of potentially unwarranted litigation, a grandparent seeking visitation must make an initial showing of facts that would justify a visitation order by filing a complaint that is either detailed and verified or accompanied by a detailed affidavit. *See id.* at 1066; *accord Daniels v. Daniels*, 381 N.J.Super. 286, 885 A.2d 524, 530–31 (2005). The New Jersey Appellate Division shared the same concern that "the litigation itself is a burden on the parent's substantive due process rights. One can easily imagine circumstances in which that burden would be grave indeed." *Wilde v. Wilde*, 341 N.J.Super. 381, 775 A.2d 535, 544 (2001). The court adopted a requirement that grandparents could not commence litigation until they had made substantial efforts to repair their relationship with the parent and their request for visitation had been denied with finality. *See id.* at 545.

[¶ 16] Consistent with the analysis of the *Troxel* and *Rideout* pluralities, the decisions of these other courts, and the great importance of the rights at issue, we hold that forcing parents to defend against a claim for grandparent visitation is itself an infringement of their fundamental right to make decisions concerning the custody and control of their children. Such an infringement is subject to strict scrutiny, and must be narrowly tailored to serve a compelling state interest. *Flores*, 507 U.S. at 301–02, 113 S.Ct. 1439; *Rideout*, 2000 ME 198, ¶ 19, 761 A.2d at 299–300 (plurality). Accordingly, we must decide whether section 1803(1)(A), granting the grandparents in this case standing to petition for visitation with their granddaughter because her father had died, serves a compelling state interest, and if so whether it is narrowly tailored to that purpose.

#### 4. Compelling State Interest

[¶ 17] The *Rideout* plurality addressed the question of what state interests are important enough to justify a court's intrusion into family life pursuant to the Maine Act. Two points of reference are clear: on one hand, "the threat of harm to a child is certainly sufficient to provide the State with a compelling interest," *Rideout*, 2000 ME 198, ¶ 23, 761 A.2d at 300; on the other, "something more than the best interest of the child must be at stake in order to establish a compelling state interest," *id.* ¶ 23, 761 A.2d at 301. In between these two poles, the plurality concluded that the State's *parens patriae* interest can be compelling in this context when, even in the absence of a threat of harm, there are "urgent reasons" that may justify court-ordered grandparent visitation. *Id.* ¶¶ 24–25, 761 A.2d at 301. Maintaining a relationship between children and grandparents who had acted as the children's parents for a significant period of time was such an urgent reason. *Id.* ¶¶ 25–27, 761 A.2d at 301–02. We subsequently approved the "urgent reasons" standard in a unanimous opinion in *Robichaud v. Pariseau*, 2003 ME 54, ¶¶ 8, 10, 820 A.2d 1212, 1215–16. We affirmed the denial of standing to a grandmother whose affidavit pursuant to section 1803(1)(B) had alleged facts only amounting to "intermittent contact" with her grandchildren, rather than the "extraordinary contact" found in *Rideout*. *Id.* ¶ 10, 820 A.2d at 1216. Because the grandmother did not make an initial showing of urgent reasons, the District Court was correct to dismiss the petition without holding an evidentiary hearing. *Id.* ¶ 11, 820 A.2d at 1216.

[¶ 18] When a grandparent claims standing based on a "sufficient existing relationship" or an effort to establish one, the Act provides a summary procedure for testing that claim that allows the court to examine the specific facts of the case and decide whether urgent reasons have been shown that justify imposing on the parent the burdens of litigation. 19-A M.R.S. § 1803(1)(B)-(C), (2)(A)-(C). No such procedure exists when the grandparent claims standing under section 1803(1)(A) because one of the child's parents has died. In effect, the Act adopts a per se rule that the fact of a parental death in itself justifies imposing on the surviving parent the burden of litigation that, as we have said above, itself infringes on the parent's fundamental rights and may result in court-ordered visitation that more significantly infringes those rights. We do not see, however, how the fact of a parental death *standing alone* can be an urgent reason for a court's interference in family life over the objections of a custodial parent like Patricia Conlogue. "Nothing in the unfortunate circumstance of one biological parent's death affects the surviving parent's fundamental right to make parenting decisions concerning their child's contact with grandparents." *Kyle O. v. Donald R.*, 85 Cal.App.4th 848, 102 Cal.Rptr.2d 476, 486 (2000).

[¶ 19] It is easy to envision situations in which section 1803(1)(A) would grant the grandparents standing even though the facts do not warrant litigation over visitation: for example, the deceased parent may have had no role in the child's life, so that the death does little to alter the child's situation; or a widow or widower may have wonderful parenting support from relatives and friends, so that the children are in no sort of urgent circumstances, yet lack the financial resources to defend against a visitation petition by wealthier grandparents. When the grandparents proceed under section 1803(1)(A), the court has no way to know of such facts until it holds an evidentiary hearing, and its ability to deny visitation at that point in

the proceedings comes too late to fully protect the fundamental rights of the surviving parent. The possibility of an after-the-fact award of attorney fees is an insufficient remedy, in part because the parent may be in no position to pay an attorney up front and then hope for reimbursement, but also because the burdens of litigation are not solely financial, but include various forms of "pressures and stress" that can pose a real threat to family well-being. *See Rideout,* 2000 ME 198, ¶¶ 55–56, 761 A.2d at 310 (dissenting opinion); *see also id.* ¶ 30, 761 A.2d at 302 (plurality opinion) (noting that litigation causes expense, stress, and pain).

[¶ 20] The grandparents argue that there is a compelling state interest in providing a forum for children who have been traumatized by the death of a parent to maintain or establish relationships with their grandparents. We agree that the maintenance or establishment of such a relationship may be in the best interest of the child, although protecting the best interest of a child is not itself a compelling state interest. *See id.* ¶ 23 & n. 15, 761 A.2d at 301 (plurality). In some cases there may even be "urgent reasons" to maintain or establish such a relationship, which would suffice in those cases to demonstrate a compelling interest. But given the burden that section 1803(1)(A)'s automatic grant of standing imposes on the surviving parent in *every* case, we do not believe that there can be a compelling interest in relieving grandparents of the modest burden of making an initial showing of the urgent reasons that justify their standing.

[¶ 21] Similarly, the State, as amicus curiae, argues that there is a compelling state interest in maintaining connections between a child and his deceased parent's family. That may be true in some situations, for example when the parents of the deceased parent have functioned as parents to the child or are uniquely situated to protect the child from harm. Again, however, we cannot say that the state interest in maintaining such connections is so compelling that it must be recognized in every case, regardless of the particular facts.

[¶ 22] We conclude that the death of one parent in itself is not an urgent reason that justifies forcing the surviving parent into litigation under the Act. Section 1803(1)(A) thus fails to serve a compelling state interest when it is applied to allow the deceased parent's family to litigate visitation over the objection of a custodial parent like Patricia. Because there is no compelling state interest, we need not consider whether section 1803(1)(A) is narrowly tailored. In the absence of a compelling state interest, forcing Patricia to defend against the grandparents' visitation petition for the sole reason that her daughter's father is dead would violate her substantive due process rights. Accordingly, the District Court did not err in dismissing the petition.

## B. Award of Costs and Fees

[¶ 23] The grandparents argue that the court acted beyond its discretion in granting Patricia's motion for costs and fees without holding a hearing or requesting them to submit a financial affidavit. The court acted pursuant to former 19–A M.R.S.A. § 1803(6) (1998), which provided: "6. Costs and fees. The court may award costs, including reasonable attorney's fees, for defending or prosecuting actions under this chapter." Subsection (6) was repealed, effective September 17, 2005, and replaced by new 19–A M.R.S. § 105(1) (2005), which provides a general grant of authority to the court to award attorney fees and costs, after an opportunity for

hearing, in any action arising under title 19–A. P.L.2005, ch. 323, §§ 1, 13.[8]

 [¶ 24] When authorized by statute, the decision whether to award attorney fees is committed to the sound discretion of the trial court. *Dargie v. Dargie,* 2001 ME 127, ¶ 30, 778 A.2d 353, 360. Such an award should be based on all relevant factors, including the relative capacity of the parties to absorb the costs of litigation. *Id.* ¶ 31, 778 A.2d at 360. Here the grandparents contend that the court abused that discretion by failing to give them an adequate opportunity to contest the allegations in Patricia's affidavit or to offer their own financial information. As described above, at the hearing the court stated that it was deferring consideration of Patricia's motion for costs and fees until the final hearing, if there was one, and did not respond to the suggestion of the grandparents' attorney that they be given two weeks to submit financial information. As Patricia points out, the grandparents could have submitted an affidavit without waiting for an explicit invitation from the court. After the hearing, however, they could have reasonably believed that it was unnecessary to do so at that point because the court would not grant the motion without giving them some further notice, either that it would hold an additional hearing or that it would decide the question without a hearing. *See McCain Foods, Inc. v. Gervais,* 657 A.2d 782, 784 (Me.1995).

[¶ 25] In these circumstances, where there was at least a misunderstanding concerning the opportunity of the grandparents to oppose Patricia's motion for costs and fees, we will vacate the court's order granting the motion and remand for reconsideration, including consideration of the costs and fees incurred by Patricia in successfully defending this appeal. On remand the court should give the parties an opportunity to submit additional affidavits and for a hearing as provided by the newly-adopted section 105(1).

The entry is:

Judgment of dismissal affirmed. Order on costs and fees vacated. Remanded for further consideration of costs and fees.

---

8. The new statute provides: "In an action under this Title, including actions to modify or enforce existing orders, the court may, after an opportunity for hearing, order a party, including a party in interest, to pay another party or another party's attorney reasonable attorney's fees, including costs, for participation in the proceedings." 19–A M.R.S. § 105(1) (2005).