JABAR, J.,
dissenting.
[¶ 29] I respectfully dissent because I believe that the grandparent in this case presented enough evidence of a sufficient effort to establish a relationship with the child to demonstrate standing to seek an order of visitation and access pursuant to 19-A M.R.S. § 1803(1)(C) (2015). The Court’s interpretations of the Grandparents Visitation Act (Act), 19-A M.R.S. §§ 1801-1805 (2015), in this case and in prior cases, have rendered it nearly impossible for any grandparent to establish standing to take advantage of the Act. *475 Under these circumstances, it would be better if the Court held the Act facially unconstitutional, thereby prompting the Legislature to redraft the Act so that its express provisions would afford the requisite constitutional protections for the fundamental familial rights at stake.
[¶ 30] The Court correctly recognizes that grandparents do not have any constitutional or common law rights to access their grandchildren. Court’s Opinion ¶ 12; Rideout v. Riendeau, 2000 ME 198, ¶ 26 n. 16, 761 A.2d 291. However, grandparents do. have statutory rights to petition for visitation and access pursuant to the Act. 19-A M.R.S. § 1808. When the Maine Legislature passed the Act, it recognized that children have a right to maintain beneficial relationships with their grandparents. In the bill that led to passage of the Act, the Legislature stated: “All children are entitled to enjoy secure, stable and beneficial relationships with their grandparents and to maintain these' relationships unless they endanger the welfare of the child- as defined by the child abuse and neglect laws of this State.” L.D. 1307, Statement of Fact (116th Legis. 1991). The judicial forum and remedy created by the Act is thus derivative of the interest that children have in benefitting from relationships with their grandparents. Id.; see also Troxel v. Granville, 530 U.S. 57, 64, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (“[NJonparental visitation statutes are .... supported by a recognition, which varies from State to State, that children should have the opportunity to benefit from relationships with statutorily specified persons — for example, their grandparents.”); Fairbanks v. McCarter, 330 Md. 39, 622 A.2d 121, 126 (1993) (“As a general proposition, visitation awarded to adults is not for their gratification or enjoyment, but to fulfill the needs of the child.”), overruled in part on other grounds by Koshko v.-Haining, 398 Md. 404, 921 A.2d 171, 195 (2007).
[¶ 31] The Act as currently codified sets out three separate provisions that afford grandparents the opportunity to request court-ordered visitation with a grandchild. Title 19-A M.R.S-. § 1803(1) provides as follows:
I. Standing to petition for visitation rights. A grandparent of a minor child may petition the court for reasonable rights of visitation or access if:
A. At least one of the child’s parents or legal guardians has died;
B. There is a sufficient existing relationship between the grandparent and the child; or
C. When a sufficient existing relationship between the grandparent and the child does not exist, a sufficient effort to establish one has been made.
[¶ 32] This Court’s decisions have rendered it almost impossible for a grandparent to establish standing pursuant to any one of the foregoing subsections. I discuss the demise of each subsection in turn.
A. Death of a Parent
[¶ 33] The death knell to 19-A M.R.S. § 1803(1)(A) occurred when this Court issued its decision in Conlogue v. Conlogue, 2006 ME 12, 890 A.2d 691. Although the Court indicated that it was not considering a facial challenge to the statute’s constitutionality, id. ¶5, its decisión rendered it well-nigh impossible for grandparents to avail themselves of 'subsection A. “We do not see,” the Court concluded, “how the fact of a parental death standing alone can be an urgent reason for a court’s interference in family life'over the objections of a custodial parent.” Id. ¶ 18.
[¶34] Although subsection A establishes a parent’s'death as the sole factual predicate for a grandparent’s standing to *476 pursue court-ordered visitation pursuant to the Act, Conlogue held that a parent’s death alone was not enough, id. ¶¶ 18, 22, and that grandparents must also bear “the modest burden of making an initial showing of the urgent reasons that justify their standing,” id. ¶20. The statutory predicate for standing under subsection A is simply the death of a parent. The statute does not require proof of any additional facts. If the death of a parent alone is never sufficient to establish standing to seek court-ordered visitation, then the Conlogue Court should have explicitly decided that subsection A is facially unconstitutional. Post -Conlogue, it is nearly impossible for a grandparent to use subsection A to request court-ordered visitation with a grandchild after the death of that child’s parent, even though a parental death is all that subsection A requires.
B. Sufficient Existing Relationship
[¶ 85] Pursuant to 19-A M.R.S. § 1803(1)(B), a grandparent may petition the court for an order granting access to a grandchild if “[t]here is a sufficient existing relationship between the grandparent and the child.” In Rideout, 2000 ME 198, 761 A.2d 291, the Court concluded that a grandparent could establish a “sufficient existing relationship” with a grandchild, and thereby establish standing to seek contact with the grandchild pursuant to 19-A M.R.S. § 1803(1)(B), by proving that the grandparent had served as “the primary caregiver and custodian for [the] child over a significant period of time.” See id. ¶¶ 26-27 (quotation marks omitted). In his concurring opinion, Chief Justice Wathen stated that the Court had, by “confining the Act to de facto parents[,] ... unnecessarily stripped] the Act of any significance beyond the limited results that could be achieved at common law.” Id. ¶ 40.
[¶ 36] Rideout and this Court’s subsequent decisions that equate the “sufficient existing relationship” contemplated by 19-A M.R.S. § 1803(1)(B) with the “primary caregiver and custodian” relationship required to establish de facto parenthood have rendered it extremely difficult, if not impossible, for a grandparent to establish standing pursuant to subsection B. See, e.g., Robichaud v. Pariseau, 2003 ME 54, ¶ 10, 820 A.2d 1212 (concluding that a grandmother did not have standing pursuant to subsection B when her contact with her grandchildren was “not extraordinary”).
[¶ 37] There are many relationships between a grandparent and a grandchild that are less involved than the relationship between a primary caregiver and custodian and a child, and the Act does not make any distinctions between these varying degrees of involvement. Pursuant to the language of subsection B, a grandparent establishes standing to petition for visitation by demonstrating that he or she has a “sufficient existing relationship” with the grandchild in question. The Court’s decision to equate this relational requirement with the extraordinary involvement inherent in a primary caregiving and custodial relationship frustrates the Legislature’s intent. The Legislature, by passing the Act, created a vehicle for grandparents to gain rights of access and visitation with their grandchildren, not a vehicle for obtaining the broad panoply of rights that a party may obtain through other procedural mechanisms by proving a primary caregiv-ing and custodial relationship with a child.
C. Sufficient Effort to Establish a Sufficient Existing Relationship
[¶ 38] This case involves an attempt by a grandparent to establish standing pursuant to 19-A M.R.S. § 1803(1)(C), which allows a grandparent to petition for visita *477 tion when the grandparent does not have a “sufficient existing relationship” with the child but has made “a sufficient effort to establish one.” It is important to note that the predicate for standing pursuant to subsection A was also met here because the child’s father had passed away.
[¶ 39] As to subsection C, the Court acknowledges that “there was little else Dorr could have done to demonstrate a sufficient effort to establish a relationship” with the child. Court’s Opinion ¶ 22. The Court notes that Dorr unsuccessfully attempted to maintain contact with the child and, unsuccessfully attempted to mediate the issue of contact with the. mother. Id. ¶4. As in Conlogue, the Court acknowledges that although the grandparent has established one of the factual predicates for standing that the Act identifies, that predicate is not sufficient. Id. ¶¶ 22-24. In this case, as in Conlogue, the Court couches its decision in constitutional language without holding the statute unconstitutional.
[¶ 40] I cannot join-in this treatment of the statute. Because the grandmother here met the factual predicates for standing pursuant to both subsections A and C, her petition should not have been dismissed for lack of standing.
D. Conclusion
[¶ 41] The Maine Grandparents Visitation Act, like many other grandparent visitation acts across the country, has undergone close scrutiny following the United States Supreme Court’s decision in Troxel See Kristine L. Roberts, State Supreme Court Applications of Troxel v. Granville and the Courts’ Reluctance to Declare Grandparent Visitation Statutes Unconstitutional, 41 Fam. Ct. Rev. 14, 15 (2003). Some state appellate courts have upheld the constitutionality of grandparent visitation statutes by requiring trial courts to give “deference” to parents or to deny the presumption that grandparents have the right to access their grandchildren. See id. at 26. Others have returned their grandparent visitation statutes to , the legislative branches for revisions that conform more explicitly to the constitutional mandates set fohth in Troxel. See, e.g., DeRose v. DeRose, 249 Mich.App. 388, 643 N.W.2d 259, 263 (2002) (declining to “go from the judicial robing room to the legislative cloakroom” to read into the Michigan grandparent visitation statute “requirements that go beyond the text of the statute,” and concluding that “the rewriting of the-... statute is a task best left for the Legislature.”).
[¶42] In Rideout, this Court recognized that the Act was passed “to provide a forum where certain grandparents could seek access to their grandchildren.” 2000 ME 198, ¶ 16, 761 A.2d 291. This Court’s decisions have left the structure of the Act ostensibly intact, while rendering that forum inaccessible to the grandparents that the Act identifies. Under the guise of a presumption in favor of. constitutionality, the Court has grafted requirements onto the language of the Act that were not intended by the Legislature, thereby obliterating the Act’s remedies.
[¶ 43] The Court should either hold that the Maine Grandparents Visitation Act is constitutional and recognize that petitioning grandparents prove 'standing by meeting the factual predicates established" by the Legislature, or it should hold the Act unconstitutional and encourage the Legislature to revisit the Act.