**[J-27-2023] [MO: Brobson, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| J.C.D, III AND A.M.D., | : | No. 13 MAP 2023 |
| | : | |
| Appellees | : | Appeal from the Order of the |
| | : | Superior Court at No. 1449 MDA |
| | : | 2022 dated November 14, 2022 |
| v. | : | Quashing the appeal from the York |
| | : | County Court of Common Pleas, |
| | : | Domestic Relations, order dated |
| A.L.R. AND T.A.D.-R., | : | October 6, 2022, at No. 2022-FC- |
| | : | 1432-03. |
| Appellants | : | |
| | : | ARGUED: May 23, 2023 |

**DISSENTING OPINION**

**CHIEF JUSTICE TODD**                    **DECIDED: October 18, 2023**

In affirming the Superior Court's quashal of the appeal of Appellants ("Parents") of the trial court's order holding that that Appellees ("Grandparents") have standing to pursue an action for partial physical custody of Parents' children ("Grandchildren"), the majority holds that the trial court's order is not a collateral order appealable as of right under Pa.R.A.P. 313. As I conclude that the trial court's order is appealable as a collateral order pursuant to Rule 313, I respectfully dissent.

Rule 313 provides:

**(a)** General rule.—An appeal may be taken as of right from a collateral order of a trial court or other government unit.

**(b)** Definition.—A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.

As recognized by the majority, Grandparents do not dispute that Parents have established the first two prongs of Rule 313(b). Specifically, with regard to the first prong, Grandparents agree that the issue of standing is separable from, and collateral to, the main cause of action. *See* Majority Opinion at 6-7. Grandparents also acknowledge that a decision regarding standing will have a direct effect on their ability to participate in custody proceedings, which impacts the important issue of the children's best interest, thereby establishing the second prong. *See id.* at 7-9. Thus, I agree with the majority that the dispositive issue in this matter is whether Parents have satisfied the third prong of the collateral doctrine − that their claim will be irreparably lost if postponed until final judgment in the case. Ultimately, the majority concludes that Parents have failed to satisfy the irreparability prong because they will be able to challenge the trial court's order with respect to standing on appeal from the final order in the underlying custody proceeding. I disagree with this conclusion.

The right to make decisions regarding the care, custody, and control of one's children is "one of the oldest fundamental rights protected by the Due Process Clause." *Hiller v. Fausey*, 904 A.2d 875, 885 (Pa. 2006) (citing *Troxel v. Granville*, 530 U.S. 57, 67 (2000)). Further, courts have recognized that the "burden of litigating a domestic relations proceeding can itself be 'so disruptive of the parent-child relationship that the constitutional right of a custodial parent to make certain basic determinations for the child's welfare becomes implicated.'" *Troxel*, 530 U.S. at 75 (citation omitted).

Indeed, in *Hiller*, we acknowledged the general benefits of relationships between children and their grandparents, but concluded that such benefits do not always "accrue[] in cases where grandparents force their way into grandchildren's lives through the courts, contrary to the decision of a fit parent." *Hiller*, 904 A.2d at 886. We emphasized that "[t]his consideration is especially resonant given the strain that custody litigation places

on the children as well as parents and grandparents, as noted by Justice Kennedy in [his dissent in] *Troxel*." *Id.* at 886 n.20.

In *D.P. v. G.J.P.*, 146 A.3d 204 (Pa. 2016), we addressed the importance of the threshold determination of standing in custody proceedings. In that case, the paternal grandparents filed a custody action against the parents of their grandchildren, seeking partial physical custody of their grandchildren under 23 Pa.C.S. § 5325(2) (abrogated), which allowed grandparents to seek partial or supervised physical custody of their grandchildren if the children's parents had been separated for at least six months, or were involved in divorce proceedings. The parents in *D.P.* had been separated for approximately two years, but had not initiated divorce proceedings, and they mutually agreed that all contact between the children and the grandparents should be discontinued. After the trial court issued an interim custody order granting shared legal custody only to the parents, and directing that the grandparents have no contact with the children, the parents filed a motion to dismiss the grandparents' custody petition, alleging that Section 5325(2) violated their constitutional rights to raise their children as they saw fit. The trial court granted the motion, finding Section 5325(2) to be unconstitutional. On direct appeal, we affirmed the trial court's order granting the parents' motion to dismiss, concluding that Section 5325(2), which granted the grandparents standing to seek custody solely on the basis of a parental separation of six months or more, was unconstitutional, but could be severed from the remainder of the statute.

Relevant herein, in discussing the "segregation" of "grandparent standing requirements from merits considerations," we explained:

> [W]henever there are contested issues relating to standing, [Chapter 53 of the Domestic Relations Code] gives parents the ability to bifurcate the proceedings by seeking dismissal for lack of standing, thereby requiring that any such preliminary questions be resolved before the complaint's merits are reached.

The potential for such bifurcation serves an important screening function in terms of protecting parental rights. As suggested, it facilitates early dismissal of complaints, thereby relieving families of the burden of litigating their merits where a sufficient basis for standing is absent. *Accord Rideout v. Riendeau*, 761 A.2d 291, 302-03 (Me.2000) (plurality) (indicating that, in a bifurcated procedure, grandparent-standing requirements "provide[ ] protection against the expense, stress, and pain of litigation, unless and until the grandparents have convinced the court that they are among those grandparents who may pursue visits"). Indeed, a majority of Justices in *Troxel* recognized that such litigation can itself impinge upon parental rights, especially if it becomes protracted through the appellate process.

146 A.3d at 213.

We further recounted in *D.P.* our prior recognition in *Hiller* of the "costs associated with custodial litigation," which include both financial costs, which can be particularly detrimental for a parent struggling financially, and may ultimately undermine the parent's plans for the child's future, as well as emotional costs, which include the strain that custody litigation places on the children, parents, and grandparents. *Id.* at 213 n.15. We noted that other courts have expressed similar concerns regarding the impact of custody litigation. *See, e.g., Conlogue v. Conlogue*, 890 A.2d 691, 699 (Me. 2006) ("the burdens of litigation are not solely financial, but include various forms of 'pressures and stress' that can pose a real threat to family well-being"); *Hawk v. Hawk*, 855 S.W.2d 573, 577 n.2 (Tenn. 1993) (recognizing that stresses in custody cases involving grandparents include those which may arise from public disclosure of the details of private, inter-generational disputes).

Notwithstanding the above, the majority suggests that, in relying on *D.P.*, Parents "seemingly ignore" that our discussion therein of the protection of parental rights occurred "not in the context of an appeal from a trial court's order concluding that a grandparent has standing to file and pursue an action for partial physical custody . . . but, rather, in the

context of bifurcation of the issue of standing from any merits determination at the trial court level." Majority Opinion at 10 n.6.[1] It is true that the procedural backdrop of our decision in *D.P.* may be distinct from the matter *sub judice*. However, in my view, the majority disregards the relevant analysis.

As discussed above, this Court observed in *D.P.*, as other courts have recognized, that regardless of the ultimate decision on the merits, it is custody litigation itself which is disruptive to the family and impinges upon parental rights. The majority is correct that Parents will be able to appeal a final order of custody; however, at that juncture, Parents (and Grandchildren) will have already been subjected to the expense, stress, and pain of litigation. Accordingly, in this way, Parents' rights will be irreparably lost if immediate review is not permitted.

Finally, the majority acknowledges that its decision "may be inconsistent" with the Superior Court's decision in *K.W. v. S.L.*, 157 A.3d 498 (Pa. Super. 2017). *See* Majority Opinion at 16 n.8. In *K.W.*, the trial court granted a child's prospective adoptive parents *in loco parentis* standing to file a custody complaint. The child's biological father appealed, and, prior to addressing the merits, the Superior Court considered whether the trial court's order was appealable under the collateral order doctrine. In concluding that it was, the court determined that the father's claim would be irreparably lost if postponed until a final custody order was issued. The court reasoned:

> Father has a fundamental constitutional right to parent [his child]. This includes the right to be free of custody litigation involving third parties. If we quash this appeal and remand to the trial court, Father will be subjected to extensive litigation involving Appellees, including a custody hearing and a second appeal on the exact issue he now seeks to raise. Not only would Father incur a substantial financial burden as a result

---

[1] The majority's discussion of *D.P.*, while brief, is more than what was offered by Grandparents, who failed even to cite it in their brief.

of this litigation, but he could also lose months of time caring for and bonding with [his child] as the custody hearing and appeals process drags on.

*K.W.,* 157 A.3d at 504.[2]

Certainly, the decisions of lower courts are not binding on this Court. That said, in my view, the Superior Court in *K.W.* recognized, and succinctly explicated, what the majority does not: that Parents' claim will be irreparably lost if review of the trial court's order granting Grandparents standing is postponed until a final custody order is issued, because Parents' constitutional right to make decisions regarding their children, and to be free of the expense, strain, and pain of litigation, will have already been burdened. Accordingly, I dissent.

Justice Donohue joins this dissenting opinion.

---

[2] The majority concludes that, while Parents "derive at least some of their arguments relative to the irreparability prong" from the court's reasoning in *K.W.*, because the parties did not address the applicability or continued viability of *K.W.* in their briefs, there is no reason to disapprove of the Superior Court's decision in *K.W.* at this time. Majority Opinion at 16 n.8.