MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 79
Docket:      Ken-14-551
Argued:      November 5, 2015
Decided:     May 26, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
             HUMPHREY, JJ.
Majority:    SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Dissent:     JABAR, J.

## LOUISE DORR

v.

## SARAH WOODARD

SAUFLEY, C.J.

[¶1]  Louise Dorr appeals from a judgment of the District Court (Augusta,

*E. Walker, J.*) dismissing for lack of standing her petition for court-ordered

visitation with her granddaughter pursuant to the Grandparents Visitation Act,

19-A M.R.S. §§ 1801-1805 (2015).  We conclude that Dorr's petition and affidavit

did not demonstrate "urgent reasons," or other compelling interests, sufficient to

justify the requested intrusion on Woodard's constitutional right to be free from

litigation regarding the care, custody, and control of her child.  Thus, we affirm the

court's dismissal for lack of standing.

## I.  BACKGROUND

[¶2]  Sarah Woodard is the mother of the child involved in this dispute.  The

child's father died less than a year after the child's birth.  Dorr is the mother of the

2

child's father.[1]  There is no evidence that Woodard is an unfit parent, or that Woodard's parenting causes a threat of harm to the child.  Dorr simply wants to be a part of her granddaughter's life.

[¶3]  On October 24, 2014, Dorr filed a petition in the District Court seeking court-ordered visitation with Woodard's child, alleging a sufficient existing relationship between herself and the child, or, in the alternative, that she had made a sufficient effort to establish a relationship.  *See* 19-A M.R.S. § 1803(1)(B), (C).

[¶4]  Dorr attached her own affidavit to her petition and stated the following facts.  Sarah Woodard is the child's mother, and Dorr is the child's paternal grandmother.  Before the child's birth, Dorr attended a baby shower for the child and Woodard.  Additionally, Dorr was in the hospital on the evening that the child was born—September 3, 2012.  Dorr had additional, unspecified contact with the child until Dorr's son died on April 19, 2013, when the child was seven months old.[2]  At that time, Woodard ceased contact with Dorr.  Dorr attempted to maintain contact with Woodard and the child, and she hired a mediator to assist in resolving any issues.  The mediation was unsuccessful.  After her son's death, Dorr filed documentation seeking to prove her son's paternity of the child and filed

---

[1]  For purposes of this appeal, we assume that Dorr's son is the child's father although the record does not provide proof of this fact.

[2]  Dorr's affidavit states: "I have written documentation of all contact from [the child's] birth through the death of my son Jeff in April of 2013, at which time Sarah ceased contact."  However, Dorr did not provide any documentation of the alleged contact to the court.

documentation in Probate Court naming the child as his beneficiary and heir. Dorr hopes that these actions will entitle the child to any available Social Security or death benefits.

[¶5] On November 3, 2014, Woodard filed a motion to dismiss the petition on the grounds that the Act infringes on her fundamental right to govern the care, custody, and control of her child, and is unconstitutional both on its face and as applied under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

[¶6] On December 8, 2014, the District Court dismissed Dorr's petition for lack of standing. The court found that the affidavit did not establish a sufficient existing relationship with the child or a sufficient effort to establish such a relationship, and also did not make an initial showing of "urgent reasons" that would justify an infringement on the mother's rights. Dorr timely appealed. *See* 14 M.R.S. § 1901(1) (2015); M.R. App. P. 2.

## II. DISCUSSION

A. Standard of Review

[¶7] Dorr argues that, given the unopposed facts she has presented, the plain language of 19-A M.R.S. § 1803(1)(A)-(C) provides her with standing. Woodard argues that a finding of standing on these facts would interfere with her fundamental liberty interest in raising her daughter. We review the court's

determination of a grandparent's standing to petition for visitation rights de novo. *See, e.g.*, *Robichaud v. Pariseau*, 2003 ME 54, ¶ 10, 820 A.2d 1212. "A statute is presumed to be constitutional and the person challenging the constitutionality has the burden of establishing its infirmity." *Kenny v. Dep't of Human Servs.*, 1999 ME 158, ¶ 7, 740 A.2d 560. We will not reach beyond the facts in the case before us to decide the constitutionality of matters not yet presented. *See United States v. Raines*, 362 U.S. 17, 21-22 (1960). Therefore, we address the constitutionality of the Act only in the context of the facts presented to the District Court in Dorr's initial petition and accompanying affidavit.

B.     The Act

[¶8]  In 1991, the Maine Legislature enacted the Grandparents Visitation Act, which grants grandparents a statutorily-created right to petition for court-ordered visitation with their grandchildren under certain limited circumstances. 19-A M.R.S. §§ 1801-1805. The Act requires that grandparents make an initial showing of standing in a petition and accompanying affidavit submitted to the court before litigation may commence.     19-A M.R.S. § 1803(2)(A). The Act provides that grandparents can establish standing in a petition and accompanying affidavit by showing one of the following:

>     A.  At least one of the child's parents or legal guardians has
>         died;

      B.    There is a sufficient existing relationship between the grandparent and the child; or

      C.    When a sufficient existing relationship between the grandparent and the child does not exist, a sufficient effort to establish one has been made.

19-A M.R.S. § 1803(1)(A)-(C).

[¶9]  Dorr argues that her petition and affidavit were sufficient to confer standing under all three sections of the Act.  Woodard argues that a reading of the Act that would confer standing on Dorr violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.[3]

[¶10]  We have previously considered the constitutionality of sections 1803(1)(A) and 1803(1)(B) of the Act.  We determined that conferring standing to grandparents based on the death of a parent alone, pursuant to section 1803(1)(A), is an unconstitutional application of the Act.  *Conlogue v. Conlogue*, 2006 ME 12, ¶ 22, 890 A.2d 691.  Conferring standing based on a sufficient existing relationship between the grandparent and the child, pursuant to section 1803(1)(B), can be constitutional as applied, depending on the facts alleged in the petition and accompanying affidavit.  *See Rideout v. Riendeau*, 2000 ME 198, ¶¶ 27-28, 761 A.2d 291; *Robichaud*, 2003 ME 54, ¶ 10, 820 A.2d 1212.  We have not yet

---

   [3]  We note that neither party raised arguments concerning the Maine constitution and therefore do not address this issue.  *See Rideout v. Riendeau*, 2000 ME 198, ¶ 6 n.3, 761 A.2d 291; *see also* Me. Const. art. I, § 6-A.

6

considered the constitutionality of section 1803(1)(C); its constitutionality presents a question of first impression.

C.     Constitutional Considerations

[¶11]  This case calls upon us to balance the fundamental, constitutionally recognized right of fit parents to be free from litigation by third parties concerning the care, custody, and control of their children against the statutorily created right of grandparents to petition for court-ordered visitation with their grandchildren.

[¶12]  "It is well established that, pursuant to the substantive due process component of the Fourteenth Amendment, parents have a fundamental liberty interest in making decisions concerning the care, custody, and control of their children." *Conlogue*, 2006 ME 12, ¶ 12, 890 A.2d 691.  "[F]orcing parents to defend against a claim for grandparent visitation is itself an infringement of their fundamental right to make decisions concerning the custody and control of their children." *Id.* ¶ 16.  Grandparents, on the other hand, "do not have a common law or constitutional right of access to their grandchildren." *Robichaud*, 2003 ME 54, ¶ 11, 820 A.2d 1212.

[¶13]  Nonetheless, the right of parents to make decisions concerning the care, custody, and control of their children is not absolute.  *See McNicholas v. Bickford*, 612 A.2d 866, 870 (Me. 1992).  Rather, the Constitution provides "heightened protection against state intervention in parents' fundamental right to

make decisions concerning the care, custody, and control of their children." *Rideout*, 2000 ME 198, ¶ 19, 761 A.2d 291. We have previously determined that the Act provides a mechanism by which the State may interfere with this fundamental right. *Conlogue,* 2006 ME 12, ¶ 16, 890 A.2d 691. It is the heightened protection against this State interference that mandates strict scrutiny of the Act. *Id*. ¶ 13. Therefore, all provisions of the Act that confer standing on grandparents must be narrowly tailored to serve a compelling state interest. *See Rideout*, 2000 ME 198, ¶ 19, 761 A.2d 291; *Conlogue,* 2006 ME 12, ¶ 16, 890 A.2d 691.

[¶14] Because the Act must survive strict scrutiny, the Act contains certain safeguards. *See* 19-A M.R.S. § 1803(2). Relevant here, a grandparent must demonstrate standing to petition for visitation rights before litigation may commence. 19-A M.R.S. § 1803(2)(A)-(D). To demonstrate standing, a grandparent must establish one of three statutory requirements. 19-A M.R.S. § 1803(1)(A)-(C). Additionally, in order for the Act to survive strict scrutiny, the grandparent must demonstrate a compelling state interest that provides a basis for interference with a parent's fundamental right. *See Robichaud*, 2003 ME 54, ¶ 8, 820 A.2d 1212.

8

[¶15]  We have consistently held that such a compelling interest exists when there is a threat of harm to the child or the parent is unfit.[4]  *See In re Shannon R.*, 461 A.2d 707, 711-12 (Me. 1983); *In re Ashley A.*, 679 A.2d 86, 89-90 (Me. 1996). Regarding a fit parent, however, "so long as a parent adequately cares for his or her children (i.e., is fit), there will *normally* be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."  *Rideout*, 2000 ME 198, ¶ 18, 761 A.2d 291 (quoting *Troxel v. Granville*, 530 U.S. 57, 68-69 (2000)).

[¶16]  Thus, despite the benefits to a child that could accompany a healthy and loving relationship with the child's grandparents, it will be difficult for a grandparent to demonstrate a compelling state interest sufficient to infringe on a fit parent's fundamental right when there is no threat of harm to the child.  Such an intrusion in the context of a petition for court-ordered grandparent visitation will

---

[4]  In circumstances where a parent is unfit or there is a threat of harm to the child, there are several other statutory procedures that grandparents could pursue to obtain various degrees of legal rights over their grandchildren.  *See* Child and Family Services and Child Protection Act, 22 M.R.S. §§ 4001 to 4099-H (2015); 18-A M.R.S. §§ 5201-5213 (2015) (guardians of minors); 18-A M.R.S. §§ 9-301 to 9-315 (2015) (adoption).

be court-enforced only when the grandparent demonstrates "urgent reasons"[5] for the intrusion. *Id.* ¶ 24.

[¶17]  Because the State's interest in intruding on a parent's fundamental right derives from its responsibility to assure the health and safety of the child, the focus of any "urgent reasons" must be on the child's needs, not the grandparent's interests. *See id.* ¶ 26.  The broad standard of the best interest of the child is itself not an "urgent reason" that would justify intrusion on a parent's rights; "something more . . . must be at stake."  *Conlogue*, 2006 ME 12, ¶ 17, 890 A.2d 691 (quotation marks omitted).  To date, the only "urgent reason" that we have articulated for the intrusion upon a fit parent's rights and grant of court-ordered visitation is the child's need for continued contact with a grandparent who has been a primary caregiver and custodian for a significant part of the child's life.  *Rideout*, 2000 ME 198, ¶ 25, 761 A.2d 291; *Davis v. Anderson*, 2008 ME 125, ¶ 19, 953 A.2d 1166.

D.    Dorr's Petition

[¶18]  Against this backdrop, Dorr urges us to conclude that her limited contact and her efforts to expand that contact, taken as true for the purpose of this

---

[5]  "Urgent reasons" and "exceptional circumstances" are synonymous in this context. *See Gordius v. Kelley*, 2016 ME 77, ¶ 18, --- A.3d --- (Saufley, C.J., concurring); *see also Pitts v. Moore*, 2014 ME 59, ¶ 12 n.3, 90 A.3d 1169.  Here, we reference "urgent reasons" to be consistent with prior jurisprudence regarding petitions for court-ordered grandparent visitation. *See, e.g.*, *Rideout*, 2000 ME 198, ¶ 24, 761 A.2d 291.

preliminary proceeding, were sufficient to confer standing pursuant to sections 1803(1)(A), (B), and (C) of the Act. We discuss each section in turn.

[¶19] Regarding section 1803(1)(A), the death of a parent in and of itself, without a showing of "urgent reasons," threat of harm to the child, or some other compelling interest, is not enough to confer standing under the Act. *Conlogue*, 2006 ME 12, ¶ 22, 890 A.2d 691.

[¶20] Concerning section 1803(1)(B), which confers standing when there is a "sufficient existing relationship between the grandparent and the child," the "'urgent reasons' standard presupposes extraordinary contact between a grandparent and grandchildren to satisfy the constitutional requirement of a compelling state interest to interfere with parents' right to care for and control their children." *Robichaud*, 2003 ME 54, ¶ 10, 820 A.2d 1212; *see also Rideout*, 2000 ME 198, ¶ 27, 761 A.2d 291. The facts alleged in the petition and affidavit—that Dorr attended a baby shower for the child and Woodard before the child's birth, was in the hospital the evening the child was born, and had some unspecified amount of contact with the child before the child's father died—do not demonstrate extraordinary contact and do not establish a sufficient existing relationship to confer standing. *See* 19-A M.R.S. § 1803(1)(B); *Robichaud*, 2003 ME 54, ¶ 10, 820 A.2d 1212; *Rideout*, 2000 ME 198, ¶ 27, 761 A.2d 291.

[¶21] Section 1803(1)(C) of the Act permits a grandparent to petition for visitation if a "sufficient effort" to establish a relationship between the grandparent and the child has been made. 19-A M.R.S. § 1803(1)(C). We address this section of the Act for the first time. In order to have standing, Dorr must demonstrate first that she has met that statutory standard, and second that there is a compelling state interest, such as "urgent reasons," to justify intrusion on Woodard's fundamental rights. *See Conlogue*, 2006 ME 12, ¶ 22, 890 A.2d 691; *Robichaud*, 2003 ME 54, ¶ 10, 820 A.2d 1212; *Rideout*, 2000 ME 198, ¶ 27, 761 A.2d 291.

[¶22] Dorr's petition and affidavit allege that Dorr attempted to maintain contact with Woodard and the child after the death of her son, hired a mediator to assist in resolving any issues, and made efforts to secure inheritance rights and Social Security and death benefits for the child. We must acknowledge that, where the child's father died when the child was less than one year old, there was little else Dorr could have done to demonstrate a sufficient effort to establish a relationship with the infant. For standing purposes, therefore, we assume that her efforts met the statutory requirement.

[¶23] We must also determine, however, whether granting Dorr standing to petition for visitation based on this "sufficient effort," pursuant to section 1803(1)(C), would be consistent with the Due Process Clause of the Fourteenth Amendment. *See Rideout*, 2000 ME 198, ¶ 17, 761 A.2d 291. As stated above,

regarding a fit parent, where there is no threat of harm to the child, we have previously found "urgent reasons" only when the grandparent has functioned as primary caregiver and custodian. *Id.* ¶ 27; *Davis*, 2008 ME 125, ¶ 19, 953 A.2d 1166. We have thus far declined to recognize other "urgent reasons."

[¶24] It is possible that in some circumstances, a grandparent's "sufficient effort to establish" a relationship with her grandchild could pass constitutional muster and demonstrate "urgent reasons" to intrude on a parent's fundamental rights. However, "[w]e are not called upon here to define all instances where a compelling interest could be demonstrated . . . . We need only look to the facts before us to determine whether that level of interest exists." *Rideout*, 2000 ME 198, ¶ 24, 761 A.2d 291. Assuming section 1803(1)(C) can in some circumstances be applied in a constitutional manner, we nonetheless conclude that, here, the facts are insufficient to demonstrate "urgent reasons," or other compelling interests based on the child's needs, to justify intrusion on Woodard's fundamental right to be free from litigation regarding the care, custody, and control of her child.

[¶25] Because we have assumed without deciding that a grandparent could under some circumstances show a "sufficient effort to establish" a relationship that would pass constitutional muster, we do not address Woodard's argument, raised only in the trial court, that the Act is unconstitutional on its face. *See Guardianship of Chamberlain*, 2015 ME 76, ¶ 10, 118 A.3d 229 ("[A] facial

challenge will be considered only if there is a reasoned argument that a challenged statute cannot be applied constitutionally on *any* set of facts." (emphasis added)); *United States v. Salerno*, 481 U.S. 739, 745 (1987) (stating that under a facial challenge, "the challenger must establish that no set of circumstances exists under which the Act would be valid"); *cf. Conlogue*, 2006 ME 12, ¶ 5, 890 A.2d 691 (declining to address a facial challenge to the constitutionality of the Act and noting "nothing in the Act limits grandparent visitation petitions to situations where the child is in the custody of a biological or adoptive parent").

[¶26]  Although we do not address a facial challenge, we agree with the dissent that legislative action concerning the Act is called for.  In order to construe the Act in accordance with the Constitution, our decisions have, over time, limited the scope of the Act when a grandparent is seeking to impose court-ordered visitation against the wishes of a fit parent.  *See* Dissenting Opinion ¶¶ 29, 34, 36. Thus, the language of the Act no longer tracks with the applicable law.  Families turn to the statute for guidance with their disputes, and in many instances the litigants in these matters may have little or no access to lawyers to assist them in understanding the law.  Because the Grandparents Visitation Act has been effectively and substantially limited by the constitutional constraints articulated in our decisions and in the decisions of the United States Supreme Court, the public may be misled in their reading of the statute.  The fiscal resources, emotional

14

resources, and time of the parties may be unfairly wasted if the statute is not amended to reflect the constitutional limits in effect.

[¶27]  It is uniquely the role of the Legislature to redraft statutes when the Constitution has required the courts to engraft additional requirements into statutes in order to read them constitutionally.  *See* Me. Const. art. IV, pt. 3, § 1; Dissenting Opinion ¶ 41.  We encourage the Legislature to review and amend the Act in the context of the constitutional mandates set out by the United States Supreme Court in *Troxel* and the principles we have set out in this decision and prior decisions concerning the Act.

## III.  CONCLUSION

[¶28]  Children may well benefit from the existence of a large support system that includes many family members, and we sympathize with grandparents who wish to have a relationship with their grandchildren but, due to problems in the relationship between the parents and grandparents, are not able to do so.  The question, however, is not whether the child could benefit from the involvement of her grandmother.  The question is whether the State has the authority, on the facts presented by Dorr, to intrude on the mother's decision-making on behalf of her daughter.  Ultimately, the relationship that a grandparent has with his or her grandchild is a decision to be made by a fit parent, not the courts, unless the record presents a compelling reason for the State to intervene.  There is no evidence on

this record to suggest that the child in this case is not well cared for by her mother. The facts alleged in the petition and accompanying affidavit are insufficient to provide standing to the grandmother without violating the constitutional rights of the mother.

The entry is:

Judgment affirmed.

---

JABAR, J., dissenting.

[¶29]  I respectfully dissent because I believe that the grandparent in this case presented enough evidence of a sufficient effort to establish a relationship with the child to demonstrate standing to seek an order of visitation and access pursuant to 19-A M.R.S. § 1803(1)(C) (2015).  The Court's interpretations of the Grandparents Visitation Act (Act), 19-A M.R.S. §§ 1801-1805 (2015), in this case and in prior cases, have rendered it nearly impossible for any grandparent to establish standing to take advantage of the Act.  Under these circumstances, it would be better if the Court held the Act facially unconstitutional, thereby prompting the Legislature to redraft the Act so that its express provisions would afford the requisite constitutional protections for the fundamental familial rights at stake.

[¶30]   The Court correctly recognizes that grandparents do not have any constitutional or common law rights to access their grandchildren.   Court's Opinion ¶ 12; *Rideout v. Riendeau*, 2000 ME 198, ¶ 26 n.16, 761 A.2d 291. However, grandparents do have statutory rights to petition for visitation and access pursuant to the Act.  19-A M.R.S. § 1803.  When the Maine Legislature passed the Act, it recognized that children have a right to maintain beneficial relationships with their grandparents.  In the bill that led to passage of the Act, the Legislature stated: "All children are entitled to enjoy secure, stable and beneficial relationships with their grandparents and to maintain these relationships unless they endanger the welfare of the child as defined by the child abuse and neglect laws of this State."  L.D. 1307, Statement of Fact (115th Legis. 1991).  The judicial forum and remedy created by the Act is thus derivative of the interest that children have in benefitting from relationships with their grandparents.  *Id.*; *see also Troxel v. Granville*, 530 U.S. 57, 64 (2000) ("[N]onparental visitation statutes are . . . supported by a recognition, which varies from State to State, that children should have the opportunity to benefit from relationships with statutorily specified persons -- for example, their grandparents."); *Fairbanks v. McCarter*, 622 A.2d 121, 126 (Md. 1993) ("As a general proposition, visitation awarded to adults is not for their gratification or enjoyment, but to fulfill the needs of the child."), *overruled in part on other grounds by Koshko v. Haining*, 921 A.2d 171, 195 (Md. 2007).

[¶31]   The Act as currently codified sets out three separate provisions that afford grandparents the opportunity to request court-ordered visitation with a grandchild.  Title 19-A M.R.S. § 1803(1) provides as follows:

> **1.  Standing to petition for visitation rights.**  A grandparent of a minor child may petition the court for reasonable rights of visitation or access if:
>
> > **A.**  At least one of the child's parents or legal guardians has died;
> >
> > **B.**   There is a sufficient existing relationship between the grandparent and the child; or
> >
> > **C.**   When a sufficient existing relationship between the grandparent and the child does not exist, a sufficient effort to establish one has been made.

[¶32]   This Court's decisions have rendered it almost impossible for a grandparent to establish standing pursuant to any one of the foregoing subsections. I discuss the demise of each subsection in turn.

A.     Death of a Parent

[¶33]   The death knell to 19-A M.R.S. § 1803(1)(A) occurred when this Court issued its decision in *Conlogue v. Conlogue*, 2006 ME 12, 890 A.2d 691. Although the Court indicated that it was not considering a facial challenge to the statute's constitutionality, *id.* ¶ 5, its decision rendered it well-nigh impossible for grandparents to avail themselves of subsection A.  "We do not see," the Court concluded, "how the fact of a parental death *standing alone* can be an urgent

reason for a court's interference in family life over the objections of a custodial parent." *Id.* ¶ 18.

[¶34]  Although subsection A establishes a parent's death as the sole factual predicate for a grandparent's standing to pursue court-ordered visitation pursuant to the Act, *Conlogue* held that a parent's death alone was not enough, *id.* ¶¶ 18, 22, and that grandparents must also bear "the modest burden of making an initial showing of the urgent reasons that justify their standing," *id.* ¶ 20.  The statutory predicate for standing under subsection A is simply the death of a parent.  The statute does not require proof of any additional facts.  If the death of a parent alone is never sufficient to establish standing to seek court-ordered visitation, then the *Conlogue* Court should have explicitly decided that subsection A is facially unconstitutional.  Post-*Conlogue*, it is nearly impossible for a grandparent to use subsection A to request court-ordered visitation with a grandchild after the death of that child's parent, even though a parental death is all that subsection A requires.

B.    Sufficient Existing Relationship

[¶35]  Pursuant to 19-A M.R.S. § 1803(1)(B), a grandparent may petition the court for an order granting access to a grandchild if "[t]here is a sufficient existing relationship between the grandparent and the child."  In *Rideout*, 2000 ME 198, 761 A.2d 291, the Court concluded that a grandparent could establish a "sufficient existing relationship" with a grandchild, and thereby establish standing to seek

contact with the grandchild pursuant 19-A M.R.S. § 1803(1)(B), by proving that the grandparent had served as "the primary caregiver and custodian for [the] child over a significant period of time." *See id.* ¶¶ 26-27 (quotation marks omitted). In his concurring opinion, Chief Justice Wathen stated that the Court had, by "confining the Act to de facto parents[,] . . . unnecessarily stripp[ed] the Act of any significance beyond the limited results that could be achieved at common law." *Id.* ¶ 40.

[¶36]   *Rideout* and this Court's subsequent decisions that equate the "sufficient existing relationship" contemplated by 19-A M.R.S. § 1803(1)(B) with the "primary caregiver and custodian" relationship required to establish de facto parenthood have rendered it extremely difficult, if not impossible, for a grandparent to establish standing pursuant to subsection B. *See, e.g., Robichaud v. Pariseau*, 2003 ME 54, ¶ 10, 820 A.2d 1212 (concluding that a grandmother did not have standing pursuant to subsection B when her contact with her grandchildren was "not extraordinary").

[¶37]  There are many relationships between a grandparent and a grandchild that are less involved than the relationship between a primary caregiver and custodian and a child, and the Act does not make any distinctions between these varying degrees of involvement. Pursuant to the language of subsection B, a grandparent establishes standing to petition for visitation by demonstrating that he

or she has a "sufficient existing relationship" with the grandchild in question. The Court's decision to equate this relational requirement with the extraordinary involvement inherent in a primary caregiving and custodial relationship frustrates the Legislature's intent. The Legislature, by passing the Act, created a vehicle for grandparents to gain rights of access and visitation with their grandchildren, not a vehicle for obtaining the broad panoply of rights that a party may obtain through other procedural mechanisms by proving a primary caregiving and custodial relationship with a child.

C.      Sufficient Effort to Establish a Sufficient Existing Relationship

[¶38]  This case involves an attempt by a grandparent to establish standing pursuant to 19-A M.R.S. § 1803(1)(C), which allows a grandparent to petition for visitation when the grandparent does not have a "sufficient existing relationship" with the child but has made "a sufficient effort to establish one." It is important to note that the predicate for standing pursuant to subsection A was also met here because the child's father had passed away.

[¶39]  As to subsection C, the Court acknowledges that "there was little else Dorr could have done to demonstrate a sufficient effort to establish a relationship" with the child. Court's Opinion ¶ 22. The Court notes that Dorr unsuccessfully attempted to maintain contact with the child and unsuccessfully attempted to mediate the issue of contact with the mother. *Id.* ¶ 4. As in *Conlogue*, the Court

acknowledges that although the grandparent has established one of the factual predicates for standing that the Act identifies, that predicate is not sufficient. *Id.* ¶¶ 22-24. In this case, as in *Conlogue*, the Court couches its decision in constitutional language without holding the statute unconstitutional.

[¶40] I cannot join in this treatment of the statute. Because the grandmother here met the factual predicates for standing pursuant to both subsections A and C, her petition should not have been dismissed for lack of standing.

D.    Conclusion

[¶41] The Maine Grandparents Visitation Act, like many other grandparent visitation acts across the country, has undergone close scrutiny following the United States Supreme Court's decision in *Troxel*. *See* Kristine L. Roberts*, State Supreme Court Applications of Troxel v. Granville and the Courts' Reluctance to Declare Grandparent Visitation Statutes Unconstitutional*, 41 Fam. Ct. Rev. 14, 15 (2003). Some state appellate courts have upheld the constitutionality of grandparent visitation statutes by requiring trial courts to give "deference" to parents or to deny the presumption that grandparents have the right to access their grandchildren. *See id.* at 26. Others have returned their grandparent visitation statutes to the legislative branches for revisions that conform more explicitly to the constitutional mandates set forth in *Troxel*. *See, e.g., Derose v. Derose*, 643 N.W.2d 259, 263 (Mich. Ct. App. 2002) (declining to "go from the

judicial robing room to the legislative cloakroom" to read into the Michigan grandparent visitation statute "requirements that go beyond the text of the statute," and concluding that "the rewriting of the . . . statute is a task best left for the Legislature.").

[¶42] In *Rideout*, this Court recognized that the Act was passed "to provide a forum where certain grandparents could seek access to their grandchildren." 2000 ME 198, ¶ 16, 761 A.2d 291. This Court's decisions have left the structure of the Act ostensibly intact, while rendering that forum inaccessible to the grandparents that the Act identifies. Under the guise of a presumption in favor of constitutionality, the Court has grafted requirements onto the language of the Act that were not intended by the Legislature, thereby obliterating the Act's remedies.

[¶43] The Court should either hold that the Maine Grandparents Visitation Act is constitutional and recognize that petitioning grandparents prove standing by meeting the factual predicates established by the Legislature, or it should hold the Act unconstitutional and encourage the Legislature to revisit the Act.

---

**On the briefs:**

Brian D. Condon, Esq., Law Office of Brian D. Condon, Winthrop, for appellant Louise Dorr

Michelle Allott, Esq., Farris Law, P.A., Gardiner, for appellee Sarah Woodard

**At oral argument:**

Brian D. Condon, Esq., for appellant Louise Dorr

Tammy Ham-Thompson, Esq., Farris Law, P.A., Gardiner, for appellee Sarah Woodard

Augusta District Court docket number FM-2014-459
For Clerk Reference Only